**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION**

| | | |
|---|---|---|
| Jennifer Ohlman, on behalf of herself and all others similarly situated, | ) | |
| Plaintiff, | ) | No. |
| v. | ) | |
| CenturyLink Communications, LLC, and Clear Link Technologies, LLC, | ) | JURY DEMANDED |
| Defendants. | ) | |

**CLASS ACTION COMPLAINT**

1. Plaintiff Jennifer Ohlman seeks relief against Defendants CenturyLink Communications, LLC and Clear Link Technologies, LLC for their unlawful business practice of obtaining consumer credit reports when the consumer is merely inquiring about potential service, in violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq*., ("FCRA").

2. Plaintiff and other consumers across the country confirm that, despite never ordering Defendants' services and initiating a purchase transaction, Defendants still routinely access their credit reports, and record of that access appears as a "hard inquiry" on their consumer reports.

***Parties, Jurisdiction, and Venue***

3. Plaintiff Jennifer Ohlman is a citizen of the State of Illinois, currently residing in Chicago, Illinois, located within this district.

4. Ms. Ohlman is a "consumer," as that term is defined by the FCRA, 15 U.S.C. § 1681a(c).

5. Defendant CenturyLink Communications, LLC ("CenturyLink") is a global communications company, headquartered in Monroe, Louisiana, that offers residential, small business, and large business internet and telecom services.

6. On or about April 1, 2011, CenturyLink acquired Quest Communications International, Inc.

7. Defendant Clear Link Technologies, LLC ("Clear Link") is headquartered in Salt Lake City, Utah. Clear Link delivers consumers to CenturyLink, one of its brand partners, in various regions of the nation. In fact, on information and belief, when consumers call CenturyLink, they may be transferred to Clear Link representatives and vice versa through, among other means, call forwarding or patches.

8. Defendants are users of consumer reports, as contemplated by 15 U.S.C. § 1681b.

9. This Court has federal question jurisdiction under 28 U.S.C. § 1331 because Plaintiff alleges violations of federal law, specifically 15 U.S.C. § 1681b(f).

10. Venue is proper in this district under 28 U.S.C. § 1391(b) since Plaintiff's telephone call that led to the impermissible credit pull was placed in this district. Further, both Defendants have agents in the State of Illinois, with CenturyLink's registered agent located in this district.

## ***Factual Allegations***

11. On or about December 27, 2015, Ms. Ohlman called CenturyLink while searching for internet providers in zip code 33908.

12. Because she called on a Sunday, Ms. Ohlman was patched through to a Clear Link representative.

13. In speaking to the representative, Ms. Ohlman explained that her parents reside in Florida and she wanted to investigate potential internet service providers for them.

14. The representative asked for Ms. Ohlman's social security number.

15. When Ms. Ohlman explained she did not want a credit check and was only shopping around for her parents, the representative stated that she needed the information to check for the best prices in the area but that she "shouldn't worry."

16. While still on the phone with Clear Link, Ms. Ohlman received an e-mail notification that her credit report had been pulled, resulting in a 12-point score drop.

17. Ms. Ohlman's TransUnion credit report reflected an inquiry from "Quest Land-L."

18. Ms. Ohlman asked Clear Link's representative why she had pulled the report after being told not to and the representative stated that her credit score shouldn't be affected and if it was, "it would only be by a point or two."

19. Ms. Ohlman asked to speak to a manager, who advised that the call had been recorded and that he would review the tape. He confirmed that no products or services were being ordered.

20. On or about December 29, 2015, CenturyLink sent Ms. Ohlman an e-mail approving her new internet and phone service order and scheduling an installation date.

21. After Ms. Ohlman called and escalated her matter to another supervisor, CenturyLink confirmed it would cancel her subscription.

22. Other consumers report similar problems. One person reported on an online Yahoo Business and Finance Credit forum:

> *Earlier this year I was thinking about buying Internet service from CenturyLink. I browsed their website and at one point I did add an Internet package to my "cart", but I never actually ordered it. I ended up leaving their site and decided not to get the Internet.*
>
> *Recently I found out that CenturyLink made an inquiry into my credit report...I don't feel like CenturyLink had the right to look at my credit report when I didn't even buy anything from them.*

23. Another consumer wrote on a CenturyLink forum, "This is a huge issue for me. I just found out on my yearly free credit report that CenturyTel pulled my credit history (hard check) without my permission. Not once did any representative let me know "We need to pull your report, sign here" ...

24. Plaintiff's experience, along with the above publicly available information, demonstrate that when consumers are merely shopping and not initiating purchase transactions, Defendants still have a practice of performing hard inquiries on their credit reports, and even when they are explicitly instructed not to do so.

25. Defendants' practice causes real and concrete injury to consumers. Ms. Ohlman and other consumers had their personal, private financial information impermissibly accessed. Moreover, Ms. Ohlman experienced an immediate 12-point score drop. TransUnion's website blog, available at http://blog.transunion.com/the-difference-between-hard-and-soft-credit-inquiries/, reports:

> Effect on Credit Score
>
> When it comes to your credit score, the only type of inquiry you have to worry about is a hard inquiry. A soft inquiry does not affect a credit score at all, since it's not an application for credit. Generally speaking, it's a good idea to limit the number of hard inquiries you make. A typical hard inquiry could knock up to five points off a credit score.
>
> Credit scoring models tend to associate a high number of hard inquiries with elevated risk.

### *Class Allegations*

26. Given the widespread nature of Defendants' practice, Plaintiff seeks relief on behalf of herself and two proposed classes of similarly situated consumers, defined as:

> Class 1 – Impermissible Access. All natural persons residing in the United States or its territories, excluding the Court and staff, whose consumer reports display an inquiry by Defendants, and for which Defendants have no open account or record of a written request for an account.
>
> Class 2 – Impermissible Use. All natural persons residing in the United States or its territories, excluding the Court and staff, whose consumer reports are recorded as received by Defendants, and for which there is a record of a review of that data in Defendants' possession.

27. While the number of class members is not known, Plaintiff reasonably believes that, given the reach of CenturyLink telecom services, the proposed classes are sufficiently numerous and contain hundreds, if not thousands, of members and such members can be identified from Defendants' records.

28. Given the widespread reach of Defendants' practices, the joinder of all proposed class members is impractical due to the size of the proposed classes and the relatively modest monetary value associated with each individual's claim.

29. There are questions of law and fact common to the proposed classes, which common questions predominate over any questions relating to individual class members. Such common questions include whether Defendants violated 15 U.S.C. § 1681b by not having a permissible purpose for accessing consumer credit reports since no purchase transaction had yet been initiated by the consumer.

30. Plaintiff's claims are typical of the claims of the putative class members because she was adversely impacted by Defendants' conduct and her credit report was impermissibly accessed and used.

31. Plaintiff will fairly and adequately protect the interests of the classes, has a significant interest in ensuring the effective prosecution of this matter, and has hired counsel able and experienced in class action litigation and claims brought under the FCRA.

32. Questions of law or fact common to the classes predominate over any questions affecting only individual class members, and a class action is superior to other available methods for the full and efficient adjudication of the controversy. Class actions are an efficient and consistent means of determining the legality of a standardized business practice.

33. This Court and the parties would enjoy economies in litigating common issues on a class-wide basis instead of a repetitive, individual basis.

34. No unusual difficulties will likely occur in the management of the classes as all questions of law or fact to be litigated at the liability stage are common to the classes and all compensatory relief is concomitant with a liability finding and can be calculated by automated and objective means.

35. Because Defendants have acted on grounds generally applicable to the proposed classes, final injunctive and corresponding declaratory relief with respect to the classes as a whole may be appropriate and as such, Plaintiff may seek certification under Fed. R. Civ. P. 23(b)(2) or (b)(3). Without an injunction, Defendants' violative business practices are likely to continue.

## COUNT I
### *Violations of the Fair Credit Reporting Act*

36. Plaintiff hereby restates, realleges, and incorporates herein by reference paragraphs 1-35 as if set forth fully in this Count.

### *Violations of § 1681b*

37. Section 1681b of the FCRA limits access to consumer credit reports and requires that specific requirements be met before a report is requested.

38. Defendants willfully violated 15 U.S.C. § 1681b(f) by obtaining consumer reports without a permissible purpose.

39. Upon information and belief, Defendants represented to the credit reporting bureau(s) from which it obtained consumer reports that it would request and use reports obtained from such bureau(s) only for lawful purposes pursuant to 15 U.S.C. § 1681b.

40. Defendants knew that 15 U.S.C. §§ 1681b, 1681n, and 1681q require them to refrain from impermissible obtaining consumer reports under false pretenses.

41. Defendants violated 15 U.S.C. §§ 1681b, 1681n, and 1681q by obtaining Plaintiff's and the proposed class members' consumer reports under false pretenses. Defendants had no legitimate business need to obtain these consumer reports since no business transactions had been initiated by these consumers.

42. Mere shopping does not invoke a business transaction initiated by the consumer, and thus, Defendants did not have any of the permissible purposes set forth in 15 U.S.C. § 1681b(a)(3)(A-G) when it obtained Plaintiff's and the proposed class members' consumer reports. There was no agreement to exchange goods or services for money as Plaintiff and the proposed class members had not signed up for telecom services when Defendants accessed their consumer reports.

43. Defendants failed to maintain and/or follow reasonable procedures in safeguarding the private information (such as social security numbers) of Plaintiff and the proposed class members, including procedures which would prevent the

impermissible accessing of consumer reports. For example, a reasonable procedure would be one that restricted the ability of Defendants' agents, contractors or employees to obtain reports before the consumer signed up for telecom services or filled out a credit application.

44. Defendants are liable for their willful or alternatively, negligent violations of FCRA provisions §§ 1681b, 1681n, and 1681q under 15 U.S.C. § 1681n.

WHEREFORE, Plaintiff asks that this Court enter judgment in her favor and in favor of the proposed classes, and against Defendants CenturyLink Communications, LLC and Clear Link Technologies, LLC and award damages as follows:

(A) Actual and/or statutory damages for Plaintiff and the classes under the FCRA;

(B) Punitive damages for Plaintiff and the classes in an amount to be determined at trial;

(C) Reasonable attorney's fees, litigation expenses and costs incurred in bringing this action; and

(D) Any other relief this Court deems appropriate and just under the circumstances.

Respectfully submitted,

By: /s/ Stacy M. Bardo
One of Plaintiff's Attorneys

Stacy M. Bardo
Bardo Law, P.C.
22 West Washington Street, Suite 1500
Chicago, Illinois 60602
(312) 219-6980
stacy@bardolawpc.com

Ian B. Lyngklip
Sylvia Bolos
Lyngklip & Associates Consumer Law Center, PLC
24500 Northwestern Highway, Suite 206

Southfield, MI 48075
(248) 208-8864
ian@MichiganConsumerLaw.com
sylviab@MichiganConsumerLaw.com

**DOCUMENT PRESERVATION DEMAND**

Plaintiff hereby demand that the Defendants take affirmative steps to preserve all recordings, data, documents, and all other tangible things that relate to Plaintiff and the events described herein. If Defendants are aware of any third party that has possession, custody, or control of any such materials, Plaintiff demands that Defendants request that such third party also take steps to preserve the materials.

By: /s/ Stacy M. Bardo
One of Plaintiff's Attorneys